UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Douglas Milhauser,

   Plaintiff,

v.                Civil No. 09-3379 (JNE/JJG)
                  ORDER
Minco Products, Inc.,

   Defendant.

Nicholas G. B. May, Esq., Fabian May & Anderson, PLLP, appeared for Plaintiff Douglas Milhauser.

John E. Murray, Esq., Lindner & Marsack S.C., appeared for Defendant Minco Products, Inc.

   Plaintiff Douglas Milhauser asserts violations of the Uniformed Services Employment and Reemployment Rights Act (USERRA) and the Family and Medical Leave Act (FMLA) against his former employer, Defendant Minco Products, Inc. (Minco). Now before the Court is Milhauser's motion for partial summary judgment on the USERRA claims and Minco's motion for summary judgment on both the USERRA and FMLA claims. For the reasons discussed below, the Court grants Minco's motion for summary judgment on the FMLA claims and denies all other motions.

## I.   BACKGROUND

   Milhauser worked for Minco from June 2006 to June 2009 as a maintenance technician. During this time, he twice took leave as a member of the United States Air Force Reserves. Before his first leave, Milhauser met with his supervisor to discuss complaints received about Milhauser, including his failure to fix and maintain equipment for which he was responsible, and his use of vulgar and derogatory language. After his first leave, Milhauser was reemployed

1

under the same title and pay but alleges that he was told to take over the responsibilities of a former maintenance laborer and no longer assigned technical work. Minco denies any formal change in Milhauser's duties. During his second leave, Milhauser experienced an allergic reaction to a vaccine required for deployment. He was hospitalized and did not deploy. He notified Minco and, when able, sought reemployment.

On June 3, 2009, Milhauser returned to Minco but was terminated as part of a reduction in force (RIF) that day. Three other members of the twelve person maintenance department were identified for termination but all three were ultimately transferred to open positions in Minco's production department. According to Minco, Milhauser was included in the RIF because of his relative lack of skill and cross-training. When asked whether Milhauser missed relevant cross-training because of his military absence, his supervisor John Toohey answered positively, adding "but if he had been there we would have had the proper time to work with him on it."

Minco made two reductions to their 700 person workforce in 2009, releasing 18 employees in March and another 32 in June. Minco also cut its temporary workforce from 112 employees in February 2008 to 59 in February 2009. In April of 2009, Minco announced mandatory weeklong furloughs for all employees, and, in May, Minco announced pay increase delays for certain employees.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     USERRA**

Milhauser alleges violations of §§ 4311 and 4312 of USERRA. An employee returning from service is entitled to reemployment in the position the person "would have been employed if the continuous employment of such person with the employer had not been interrupted by service, or a position of like seniority, status, and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A) (2006). An employer need not offer reemployment if "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable." § 4312(d)(1)(A). An employer bears the burden of proving impossibility or unreasonableness. *Id.* Section 4311 prohibits discrimination against a service member in "initial employment, reemployment, retention in employment, promotion or any benefit of employment by an employer on the basis of that membership." § 4311(a).

First, Milhauser alleges Minco violated § 4312 when, after his first deployment, he was reemployed as a lower status laborer. "[T]he cases where it has been held that a change in job duties constituted an adverse action involved instances when the new job responsibilities were drastically different from the old." *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 930 (8th Cir. 2007). Minco claims that any changes in his duties were not "drastic" enough to constitute a

3

change in status. The Court's review of the record reveals genuine issues of fact regarding why, and to what extent, Milhauser's duties changed after his first deployment. Summary judgment on this issue is therefore denied.

Second, Milhauser claims that termination on the day he returned from his second deployment violated his right to reemployment under § 4312 and Minco's statutory obligation to use "reasonable efforts" to qualify him for an open position in production. *See* 38 U.S.C. § 4313(a)(1)(B). Minco claims that it was excused from its reemployment obligations because employment was unreasonable or impossible. *See* § 4312(d)(1)(A); 20 C.F.R. § 1002.139(a) (2006) ("[A]n employer may be excused from reemploying the employee where there has been an intervening reduction in force that would have included that employee."). There are questions of fact about whether the reduction in force was intervening and whether, but for his previous military leave and alleged resultant lack of training, Milhauser would have been included in the reduction. Summary judgment on this issue is denied.

Milhauser's last USERRA allegation is that he was not reemployed because of discrimination. "An employer violates USERRA when a person's membership in the armed services is a motivating factor in the employer's action, unless the employer can prove the action would have been taken in the absence of such membership or obligation of service." *Maxfield v. Cintas Corp.*, 427 F.3d 544, 551 (8th Cir. 2005).[1] An employee must make an initial showing that his military status was "at least a motivating or substantial factor" in the employer's decision to terminate. *Id.* Based on the proximity between Milhauser's termination and his return from

---

[1] Minco argues that § 4311 does not apply at the time of reemployment. The Eighth Circuit has said that § 4311 applies *after* reemployment, s*ee Clegg*, 496 F.3d 922 at 930, but it would be contrary to the plain language of § 4311 to determine that it does not also cover reemployment determinations. *See* 38 U.S.C § 4311(a) ("A person who is a member of . . . a uniformed service shall not be denied . . . reemployment . . . by an employer on the basis of that membership.").

4

leave, Milhauser has met the initial burden "of showing that his membership was a motivating or substantial factor in the decision." *Id.* at 552 (finding initial burden met where employee was suspended the day he returned from leave). Minco's representation that termination decisions were made based on skill set, particularly in light of Milhauser's allegedly lower status position after his first deployment and the possibility that he missed significant training during that time, *see id.* at 553, is sufficient to create a genuine issue of fact as to whether it would have terminated Milhauser regardless of his military experience.

**B.     FMLA**

The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided [by the FMLA]" and from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful [by the FMLA]."  29 U.S.C. § 2615(a) (2006).  Two types of claims exist under the FMLA:  interference claims "that an employer denied or interfered with [an employee's] substantive rights under the FMLA," and retaliation claims "that the employer discriminated against [him] for exercising [his] FMLA rights." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

To establish an interference claim, "an employee must show only that he or she was entitled to the benefit denied."  *Id.* (quotation marks omitted).  An employer's intent is irrelevant, though an employer can avoid liability by showing that the termination was unrelated to his use of FMLA leave.  *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005).  Viewing the record in the light most favorable to Milhauser, the Court finds that Minco has made this showing and that no reasonable jury could conclude that Milhauser's medical leave was a factor in his termination.

The parties agree that Milhauser's FMLA discrimination claims should be addressed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Milhauser must first establish a prima facie case of retaliation. *See Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008). To establish a prima facie case of retaliation, Milhauser must demonstrate a causal connection between the exercise of his FMLA rights and the adverse employment action. *See id*. If Milhauser establishes a prima facie case, then Minco must "come forward with evidence of a legitimate, nondiscriminatory reason for the adverse action." *See id.* If Minco does so, then Milhauser must "come forward with evidence that creates as issue of fact as to whether the asserted reason was pretext for discrimination." *Id.*

Due to the close temporal proximity between Milhauser's exercise of FMLA rights and his termination, the Court assumes that Milhauser established a prima facie case for discrimination. *Cf. id.* n.4. Minco has identified a nondiscriminatory basis for including Milhauser in the reduction in force, i.e., his relative lack of skills; and a nondiscriminatory basis for not transferring him to an open production position, i.e., his past problems at work. To show pretext, Milhauser argues that there are questions of fact as to whether he was actually more skilled than some of the retained maintenance technicians and laborers. Milhauser cites only his own deposition testimony where he claims to be "more experienced" than two of the maintenance workers because "[he] had been there longer." Milhauser acknowledges that the other retained worker was "way smarter" and "had more knowledge of the equipment" than he did, though Milhauser believed the worker's being overweight prevented him from doing some kinds of work. Milhauser does not point to facts in the record showing his superior training or skills, or any evidence suggesting that his supervisors did not earnestly believe they were retaining individuals of greater skill and value to the department. In contrast, Toohey,

6

Milhauser's supervisor, was able to articulate specific reasons for retaining each of the maintenance workers he kept. Likewise, Milhauser's claim of superior skill fails to generate an issue of fact with respect to the retained laborers. The Production Managers who retained and transferred the laborers to production did not do so solely on the strength of their superior skill; they identified specific concerns about Milhauser's past personnel and work problems. The Court's review of the record reveals that no reasonable jury could find Minco's reasons for terminating Milhauser were a pretext for discrimination based on FMLA leave. Unlike the USERRA claim, where Milhauser argues his first service absence was allegedly connected to his termination through his lower status upon reemployment, Milhauser can neither connect his use of his FMLA leave to his termination nor identify questions of fact showing that Minco's rationale for his termination was pretextual. The Court therefore grants Minco's motion for summary judgment on the FMLA claims.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Minco's Motion for Summary Judgment [Docket No. 16] is GRANTED IN PART AND DENIED IN PART.

2. Summary judgment in favor of Minco is GRANTED as to the FMLA claims but DENIED as to the USERRA claims.

3. Milhauser's Motion for Summary Judgment [Docket No. 27] is DENIED.

Dated: October 14, 2010

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Court Judge
