UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Douglas Milhauser,

               Plaintiff

                                   Civil No. 09-3379 (JNE/JJG)

v.

                                   ORDER

Minco Products, Inc.,

               Defendant.

On September 16, 2011, a jury found Defendant Minco Products, Inc. ("Minco") not liable to Plaintiff Douglas Milhauser on Milhauser's claims under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4312 (2006). Milhauser claimed that Minco violated USERRA by discriminating against him and by failing to properly reemploy him after he returned from military leave. The case is now before the Court on Milhauser's post-trial Motion for Judgment as a Matter of Law (JMOL) or, alternatively, for a New Trial on the claim that Minco failed to reemploy Milhauser in the appropriate position in June 2009.

## I.      BACKGROUND

Minco manufactures flexible circuits, sensors and heaters for use in the automotive, telecommunications, medical and defense industries. In 2006, Minco hired Milhauser to work as a Maintenance Technician in Minco's Maintenance Department. At the time Minco hired Milhauser, it knew Milhauser was a member of the Naval Reserves. Milhauser then joined the Air Force Reserves. During his employment with Minco, Milhauser took three military leaves. His first leave was for two weeks in March 2007. His second leave began in March 2008 and lasted ten months. Milhauser's third leave began in March 2009, and ended on June 3, 2009. He was terminated immediately upon his return in June 2009.

1

Milhauser asserted four claims in this case.  First, he claimed that Minco discriminated against him after his second military leave in January 2009, when he supposedly returned to a position with lesser job duties and status.  Second, he claimed that Minco discriminated against him after his third military leave, when he returned in June 2009 and was terminated.[1]  Third, he claimed that Minco failed to reemploy him in the appropriate position after his second military leave.  Fourth, he claimed that Minco failed to reemploy him in the appropriate position after his third military leave in June 2009.[2]

A jury trial began on September 12, 2011.  Minco presented evidence that during Milhauser's employment, his supervisors received several complaints about his performance.  Some of these complaints related to Milhauser's ability to perform his job; other complaints related to Milhauser's attitude and behavior.  Minco also presented evidence that in 2008-2009, it experienced a severe decline in customer orders.  This decline led Minco to take several steps to reduce its expenses and maintain its economic viability, including cost-cutting measures, a hiring freeze, a salary freeze, pay cuts, mandatory reduction of hours, and eventually terminations.  In March 2009, Minco terminated eighteen employees.  In June 2009, Minco terminated an additional thirty-two employees.  Milhauser was one of those employees.

John Toohey, Minco's Plant Services Manager, testified that in the spring of 2009, he was told to identify four employees who would be removed from Minco's Maintenance Department as part of the reduction in force.  He explained that he selected the four employees based solely on their abilities, skill sets, and versatility.  Mr. Toohey testified that he initially

---

[1]      These first two claims are the "discrimination" claims.  The next two claims are the "reemployment" claims.

[2]      Milhauser's post-trial motion only addresses his fourth claim that Minco failed to properly reemploy him in June 2009.

believed that he was prohibited from considering Milhauser as a candidate for termination because of Milhauser's military status.  However, Human Resources then advised him that Milhauser could be considered for termination just like any other maintenance employee.  Mr. Toohey testified that because of Milhauser's limited skills and lack of unique expertise, Milhauser should be one of the four employees removed from the Maintenance Department.

Minco also presented evidence that it did not choose to offer Milhauser a position in a different department—the Production Department—because of Milhauser's performance and behavior problems.  Sherri Himmelgarn, a manager in the Production Department, testified that Milhauser often took too long to complete a task, stating that "[s]omething that should have been done in ten minutes probably took more like an hour to be done."  She stated that Milhauser often spent more time talking than working.  She also testified that on several occasions, Milhauser's "repairs" resulted in the equipment becoming completely unusable.  Moreover, Ms. Himmelgarn was displeased by Milhauser's apathetic response when confronted with his faulty repairs.  She testified that employees in her department started asking engineer techs to work on their equipment just so they could avoid having Milhauser work on it.  Her department did not experience similar problems with or complaints regarding the other individuals who were selected for the open positions in the Production Department.  At a meeting with the other managers, Ms. Himmelgarn informed them of her issues with Milhauser's performance, told them that she would not trust him with any of her equipment, and that she would not recommend him for a position in the department.  Milhauser was subsequently not offered one of the open positions in the Production Department.

At the close of Minco's case, Milhauser moved for JMOL on his claim that Minco failed to reemploy him upon his return from military leave in June 2009, in violation of 38 U.S.C.

3

§ 4312.[3]  The parties had stipulated that Milhauser satisfied the prerequisites for reemployment under § 4312(a).  Milhauser contended that he was absolutely entitled to a job upon his return from military leave, regardless of Minco's changed circumstances.  He argued that Minco failed to prove its affirmative defense that reemployment was "impossible or unreasonable," because, according to Milhauser, an employer's economic problems and resulting reductions in force do not make reemployment "impossible or unreasonable" under § 4312(d).  Specifically, Milhauser argued that in the absence of a seniority system, an employer cannot, under any circumstances, terminate a returning veteran, even as part of a reduction in force.  The Court denied Milhauser's motion and submitted the claim to the jury.

On September 16, 2011, the jury asked the following question regarding Jury Instruction number 8:

> Instruction # 8
>
> Can you please clarify USERRA reemployment in the escalator position
>
> This is confusing in that it states 2 completely opposite possibilities—the same position had military leave not been taken or demotion, transfer <u>lay off</u> or termination
>
> Is a layoff a possible reemployment position?

The Court provided the jury with the following response:

> The escalator position is the position that the returning person would have been in if they had not taken the leave.  Please refer to the explanation of the principle of the escalator position contained in instruction no. 8.
>
> I hope this is helpful to you.

Jury Instruction Number 8 read as follows:

> When a member of the uniformed services returns from a service of 90 days or less, USERRA requires that the employer promptly reemploy him in a

---

[3]     Minco moved for JMOL on the two discrimination claims—this motion was denied.

particular position.  There are several possible reemployment positions.  It is your responsibility to determine, first, the applicable reemployment position and, second, whether the employer employed the plaintiff in that position.

First, USERRA requires reemployment in the position the employee would, with reasonable certainty, have been in had his employment not been interrupted by the military service.  This is called the escalator position.  The principle is that the employee should be in the same position he would have been in had he not taken military leave, no better and no worse.  Depending on what happened during the employee's absence, the escalator position might be a promotion, demotion, transfer, lay-off, or termination.  It is up to you to determine what position Mr. Milhauser would have been in had he not taken military leave.  For purposes of determining the escalator position, "reasonable certainty" does not mean absolute certainty, but rather it means a high probability.  In addition, Mr. Milhauser must be qualified to perform the duties of this position.  Qualified, for these purposes, means able to perform the essential elements or tasks of the position.  If he is not qualified, Minco has an obligation to use reasonable efforts to qualify him for the position.

If Mr. Milhauser is not and cannot become qualified for the escalator position after reasonable efforts by Minco, then he is entitled to reemployment in any other position which is the nearest approximation of that position, provided he is qualified to perform the position.

It is Mr. Milhauser's burden to show that Minco failed to reemploy him in the escalator position or in a position which was the nearest approximation of the escalator position.

On September 16, 2011, the jury returned a verdict finding that Milhauser failed to prove by a preponderance of his evidence either of his discrimination claims.  The jury also found that Milhauser did not prove by a preponderance of the evidence that Minco failed to reemploy him in the appropriate position as required by USERRA after his returns from leave in both January 2009 and June 2009.  Finally, the jury found that Minco failed to prove by a preponderance of the evidence that its circumstances had so changed as to make Milhauser's reemployment impossible or unreasonable.  Milhauser's now moves for JMOL, or alternatively, for a new trial, regarding his claim that Minco violated USERRA by failing to reemploy him after he returned in June 2009.  Milhauser contends that the jury was improperly instructed on the law.  Specifically, Milhauser argues that termination cannot be a legitimate "position of employment" under

USERRA and that Jury Instruction No. 8 incorrectly allowed the jury to believe that termination

was a possible reemployment position.

## II.      DISCUSSION

### A.  Legal Standard

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A party may renew a Rule 50 motion after trial.  Fed. R. Civ. P. 50(b).  In ruling on a

renewed motion when a verdict has been returned, the court may allow the judgment to stand,

order a new trial, or direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1)-(3).

When considering a post-trial motion for judgment as a matter of law, the court determines

"whether the record contains sufficient evidence to support the jury's verdict."  *Bass v. Gen.

Motors Corp.,* 150 F.3d 842, 845 (8th Cir.1998).  The court views the evidence in the light most

favorable to the non-moving party and grants the non-moving party the benefit of all reasonable

inferences.  *Canny v. Dr. Pepper/Seven–Up Bottling Group, Inc.,* 439 F.3d 894, 899–900 (8th

Cir.2006).  A judgment as a matter of law is appropriate when "there is no legally sufficient

evidentiary basis for a reasonable jury to find for the party on that issue."  Fed. R. Civ. P.

50(a)(1); *see also Canny,* 439 F.3d at 899–900.

Under Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the

issues—and to any party—... for any reason for which a new trial has heretofore been granted in

an action at law in federal court."  Fed. R. Civ. P. 59(a).  "The decision whether to grant a new

trial lies within the sound discretion of the district court."  *Brown v. Cox*, 286 F.3d 1040, 1046

6

(8th Cir. 2002).  A new trial is justified if the verdict is "against the great weight of the evidence," *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996), and a new trial should be granted only where it is necessary to prevent a miscarriage of justice.  *Bass,* 150 F.3d at 845; *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1400 (8th Cir.1994).  "In determining whether a verdict is against the weight of the evidence, the trial court can ... weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *White v. Pence,* 961 F.2d 776, 780 (8th Cir.1992) (quotation marks omitted).  "The court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred." *Ryan v. McDonough Power Equip., Inc.,* 734 F.2d 385, 387 (8th Cir.1984).  A new trial may also be ordered if the court erred in instructing the jury on the applicable law.  *T.H.S. Northstar Assocs. v. W.R. Grace & Co.-Conn.*, 860 F. Supp. 640, 650 (D. Minn. 1994), *vacated on other grounds*, 66 F.3d 173 (8th Cir. 1995).  The jury instructions are to be considered in their entirety to determine whether the charge fairly and adequately submits the issues to the jury.  *Laubach v. Otis Elevator Co.*, 37 F.3d 427, 429 (8th Cir. 1994).  Erroneous jury instructions may be grounds for a new trial if "the errors misled the jury or had a probable effect on the jury's verdict." *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 434 F.3d 1081, 1093 (8th Cir. 2006) (internal quotation marks omitted).

## B.  USERRA

USERRA entitles returning servicemembers to certain reemployment rights, to ensure that they are not penalized for their military service.  Under USERRA, "any person whose absence from a position of employment is necessitated by a reason of service in the uniformed services shall be entitled to the reemployment rights and benefits . . . of this chapter" if the

person meets certain eligibility requirements.[4]  38 U.S.C. § 4312(a).  However, "[a]n employer is

not required to reemploy a person under this chapter if . . . the employer's circumstances have so

changed as to make such reemployment impossible or unreasonable."  *Id.* § 4312(d)(1)(A).  "For

example, an employer may be excused from reemploying the employee where there has been an

intervening reduction in force that would have included that employee."  20 C.F.R. § 1002.139.[5]

The employer has the burden of proving impossibility or unreasonableness.  38 U.S.C.

§ 4312(d)(2).[6]

If an employer fails to prove impossibility or unreasonableness, then USERRA requires

that the returning employee be "promptly reemployed in a position of employment."  *Id.*

§ 4313(a).  The appropriate reemployment position depends on the length of the employee's

service.  Where the period of service was for less than ninety-one days, the employee must be

placed "in the position of employment in which the person would have been employed if the

continuous employment of such person with the employer had not been interrupted by such

service," as long as the employee is qualified or can become qualified for this position with

reasonable efforts by the employer.  *Id.* § 4313(a)(1)(A).  This position is called the "escalator

position."  If the employee is not qualified for the escalator position, the employee must be

placed in his pre-service position, as long as he is qualified or can become qualified with the

employer's reasonable efforts.  *Id.* § 4312(a)(1)(B).  Finally, if the employee is not qualified for

either the escalator or pre-service position, he must be placed in any other position he is qualified

---

[4]        The parties stipulated that Milhauser met these eligibility requirements.

[5]        Congress authorized the Department of Labor to prescribe regulations implementing
USERRA.  38 U.S.C. § 4331; *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1012 (8th Cir. 2011).

[6]        This is the affirmative defense provision.

to perform and that most nearly approximates the escalator or pre-service position.  *Id.*

§ 4313(a)(4).

The escalator position is the job position the employee "would have attained with

reasonable certainty if not for the absence due to uniformed service."  20 C.F.R. § 1002.191.

"Reasonable certainty" is a "high probability," not an absolute certainty.  *Id.* § 1002.213.  "The

principle behind the escalator position is that, if not for the period of uniformed service, the

employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to

intervening events."  *Id.* § 1002.191.  In some cases, application of the escalator principle may

result in adverse consequences when the employee is reemployed.

> The Act does not prohibit lawful adverse job consequences that result
> from the employee's restoration on the seniority ladder.  Depending on the
> circumstances, the escalator position may cause an employee to be reemployed in
> a higher or lower position, laid off, or even terminated.  For example, if an
> employee's seniority or job classification would have resulted in the employee
> being laid off during the period of service, and the layoff continued after the date
> of reemployment, reemployment would reinstate the employee to layoff status.
> Similarly, the status of the reemployment position requires the employer to assess
> what would have happened to such factors as the employee's opportunities for
> advancement, working conditions, job location, shift assignment, rank,
> responsibility, and geographical location, if he or she had remained continuously
> employed.  The reemployment position may involve transfer to another shift or
> location, more or less strenuous working conditions, or changed opportunities for
> advancement, depending upon the application of the escalator principle.

20 C.F.R. § 1002.194.

## 1.  *Termination as a Possible "Position of Employment" Under USERRA*

Minco has never claimed that Milhauser was not qualified for the escalator position.

Rather, Minco asserted at trial, and continues to argue now, that because it was undergoing a

company-wide reduction in force, and because of Milhauser's relative lack of skills, previous

poor work performance and behavior issues, Milhauser would have been included in that

reduction even had he remained continuously employed.  Thus, Minco argues, the escalator

position in this case *was* termination—and Minco properly "reemployed" Milhauser in that

position.  Milhauser, however, claims that "termination is not, under any logical analysis, a

'position of employment,'" but is instead "a position of *non-employment*."  Pl.'s Reply Mem. 2.

He believes that he was absolutely entitled to be rehired as a Maintenance Technician when he

returned from leave.[7]

When interpreting any statute, courts begin with the plain language.  *Jiminez v.*

*Quarterman*, 555 U.S. 113, 118 (2009).  "[W]hen the statutory language is plain, we must

enforce it according to its terms."  *Id.*  USERRA requires that the returning servicemember be

reemployed "in the position of employment in which the person would have been employed if

the continuous employment . . . had not been interrupted" by the military service.  38 U.S.C.

§4313(a)(1)(A).  Milhauser argues that the plain meaning of "position of employment"

necessarily means that termination cannot be a reemployment position.  Contrary to Milhauser's

argument, however, the regulations implementing USERRA explicitly state that under some

circumstances, termination may be a "position of employment."  *See, e.g.*, 20 C.F.R. § 1002.191

("The principle behind the escalator position is that, if not for the period of uniformed service,

the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due

to intervening events."); 20 C.F.R. § 1002.194 ("Depending on the circumstances, the escalator

---

[7]      During trial, Milhauser argued that, in the alternative, he was at least entitled to a job in
the Production Department.  The Court rejected that argument, finding nothing in the case law
supporting his argument that an employer must place the returning employee in *any* other
available position, regardless of whether the employee would have attained that position but for
his leave.  Milhauser now argues that USERRA required his reemployment in the position of
Maintenance Technician.  The Court, therefore, will not address Minco's decision not to offer
Milhauser a job in its Production Department.

position may cause an employee to be reemployed in a higher or lower position, laid off, or even terminated.").[8]

Further, as Minco notes in its brief, Milhauser's interpretation requires the Court to read the statute as saying that the returning employee must be reemployed "in the position of employment in which the person would have been employed if the continuous employment . . . had not been interrupted, *unless that position would be discharge*."  Courts must "refrain from embellishing statutes by inserting language that Congress has opted to omit."  *SEC v. Zahareas*, 272 F.3d 1102, 1106-07 (8th Cir. 2001) (internal quotation marks omitted).  The plain language of the statute does not indicate that the employee cannot be demoted, laid off, or terminated—it only requires that the returning servicemember be reemployed in the same position he would have been in had he not taken military leave.  *See* 38 U.S.C. §4313(a)(1)(A); *Clegg v. Ark. Dep't of Correction*, 496 F.3d 922, 930 (8th Cir. 2007) (stating that USERRA "is violated only if [the employee] was not reemployed in the position []he would have been in had []he not taken military leave").

Not only is termination a possible position of reemployment, it can sometimes be a *required* position of reemployment.  For example, in *Derepkowski v. Smith-Lee Co., Inc.*, 371 F. Supp. 1071 (E.D. Wis. 1974), the court found that an employer may not place a returning servicemember in an available employment position when the escalator position was termination.  In that case, during the plaintiff employee's military leave, the defendant employer transferred its operations from Milwaukee to New York.  *Id.* at 1071.  Some employees were terminated at the time of the transfer and were paid severance benefits.  *Id.*  Upon the employee's return, he was

---

[8]      Milhauser argues that "[n]owhere in the applicable regulation, the statute or case law is 'discharge' identified as a possible 'escalator position.'"  Pl.'s Reply Mem. 6.  While the term "discharge" is not used, § 1002.194 clearly provides that "termination" is a possible escalator position.

offered a position in the New York operation, but was not offered termination with severance

benefits. *Id.* The court concluded that the employer was obligated "to restore the plaintiff to the

'status' he would have enjoyed had he been present in the defendant's employ rather than in

military service—the 'status' being that of a terminated employee eligible for severance pay."

*Id.* at 1072. Thus, the employer was obligated to give the returning employee the same

opportunity he would have had if he had not been absent—even if that "opportunity" was

termination.

Contrary to Milhauser's argument, it is clear that in some cases, termination is a possible

reemployment position. Milhauser appears to concede this point by arguing that termination is

only appropriate in cases involving seniority ladders. Therefore, the question remains as to

under what circumstances can termination be a possible position of employment under

USERRA. Milhauser argues that the *only* situation in which application of the escalator

principle may result in an adverse consequence upon reemployment is when a seniority ladder is

implicated; no such seniority ladder was involved here. Because Milhauser was not restored on a

seniority ladder, he asserts that he had an absolute right to reemployment in some position,

regardless of whether or in which position he would have been employed but for his military

leave. Minco contends that adverse consequences may occur even in the absence of a seniority

ladder.

Looking first at the plain language of the statute, section 4313(a)(1)(A) requires that the

returning employee be placed "in the position of employment in which the person would have

been employed if the continuous employment of such person with the employer had not been

interrupted by such service." *See* 38 U.S.C. § 4313(a)(1)(A). The position must be determined

with "reasonable certainty." 20 C.F.R. § 1002.191; *Id.* § 1002.213 (explaining that "reasonable

certainty" is a "high probability," not an absolute certainty). The statutory provision makes no reference to seniority, nor does it explain what factors a jury can or cannot consider when determining in which position it is reasonably certain the returning veteran would have been employed had he not taken leave.[9] The plain language provides no indication that an employee's "position of employment" depends solely on the presence of a seniority ladder.

Milhauser relies heavily on 20 C.F.R. § 1002.194, which provides, in part:

> The Act does not prohibit lawful adverse job consequences that result from the employee's restoration on the seniority ladder. Depending on the circumstances, the escalator position may cause an employee to be reemployed in a higher or lower position, laid off, or even terminated. For example, if an employee's seniority or job classification would have resulted in the employee being laid off during the period of service, and the layoff continued after the date of reemployment, reemployment would reinstate the employee to layoff status.

This regulation does not say that restoration on a seniority ladder is the *only* situation in which adverse consequences may occur. Milhauser argues that if adverse consequences are permissible in cases not involving seniority ladders, the first sentence of § 1002.194 ("[t]he Act does not prohibit lawful adverse job consequences that result from the employee's restoration on the seniority ladder") would be superfluous. But if adverse consequences are permissible *only* in cases involving seniority ladders, then the phrase "or job classification" might be rendered meaningless.[10] It does not appear that this regulation purports to be an exhaustive list of situations in which USERRA permits adverse job consequences. Further, 20 C.F.R. § 1002.191,

---

[9]     Notably, other provisions of USERRA do explicitly refer to seniority. *See, e.g.*, 38 U.S.C. § 4313(a)(2)(A) (providing that in the case of a military leave longer than ninety days, the returning veteran must be put in the position he would have otherwise been in "or a position of like seniority, status and pay"); *Id.* § 4313(b)(2) (providing that the returning servicemember be reemployed "with full seniority"). "[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

[10]     It is unclear to the Court what exactly is meant by "job classification" in this context.

which describes the position to which the returning employee is entitled, explains that "[t]he principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events." This regulation makes no reference to seniority ladders, and there is no reason for this Court to equate "intervening events" with "seniority ladder." "In interpreting statutory text, we ordinarily presume that the use of different words is purposeful and evinces an intention to convey a different meaning." *Abbott v. Abbott*, 130 S. Ct. 1983, 2003 (2010); *Russello v. United States*, 464 U.S. 13, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.").[11]

Further, the Department of Labor specifically addressed section 1002.194 and concluded that factors other than seniority can also adversely affect the reemployment position. *See* Uniformed Services Employment and Reemployment Rights Act of 1994, as Amended, 70 Fed. Reg. 75246, 75273 (Dec. 19. 2005). The initial proposed regulation stated,

> Depending on your circumstances, your *seniority rank* may cause you to be reemployed in a higher or lower position, laid off, or even terminated. For example, if your *seniority* would have resulted in your being laid off during the period of service, and the layoff continue after the date of your reemployment, your reemployment would reinstate you to layoff status.

Regulations Under the Uniformed Services Employment and Reemployment Rights Act of 1994, as Amended, 69 Fed. Reg. 56266, 56296 (proposed Sept. 20, 2004) (emphasis added). In

---

[11]   USERRA's legislative history is also of little assistance. It provides that the only position guaranteed upon the servicemember's return is the position he would have attained, with reasonable certainty, but for the absence for military service. H.R. Rep. No. 103-65, 1994 U.S.C.C.A.N. 2449, 2463-64 (1993). "This could be the same position or a higher, lower, or lateral (e.g., a transfer) position or even possibly a layoff or severance status, depending on what has happened *to the employment situation* in the servicemember's absence." *Id.* (emphasis added).

response to a commenter, who suggested that there are "escalator-based" factors other than seniority, such as job location, job classification, or shift assignment, which may affect the reemployment position, the Department revised the section so that these two sentences were not "too narrowly drawn."  70 Fed. Reg. 75273.  Thus, contrary to Milhauser's argument, section 1002.194 was specifically revised so as to *not* be limited only to situations involving seniority ladders.

    Neither the statute itself nor the regulations lead to the conclusion that adverse consequences may only occur by way of restoration on a seniority ladder.  The regulations, in fact, lead to the opposite conclusion.  Thus, the Court finds Milhauser's argument unavailing. The Court notes, however, that many of the cases in which the escalator principle has been analyzed seem to involve either seniority ladders or collective bargaining agreements.  *See, e.g.*, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-85 (1946) (involving a layoff based on seniority and explaining that a returning employee "does not step back on the seniority escalator at the point he stepped off" but instead "steps back on at the precise point he would have occupied had he kept his position continuously during the war"); *Derepkowski v. Smith-Lee Co., Inc.*, 371 F. Supp. 1071 (E.D. Wis. 1974); *McKinney v. Missouri-Kansas-Texas R. Co.*, 357 U.S. 265 (1958); *Goggin v. Lincoln St. Louis*, 702 F.2d 698, 701 (8th Cir. 1983).  The Court could not find, nor did the parties cite, cases in which the escalator principle was applied in an at-will employment context when layoffs or terminations were involved.  Thus, it is not clear to the Court how, if at all, the escalator principle applies in such a situation.

    Although Milhauser's only argument has been that seniority status is the sole factor that may result in adverse consequences—an argument which the regulations squarely reject—the

Court nevertheless explored beyond the arguments made and case law provided by the parties. [12]

While the law regarding the exact application of the escalator principle is somewhat unclear, it

appears possible that the escalator principle in general—whether it is an up-escalator entitling the

employee to promotions or benefits, or a down-escalator resulting in an adverse consequence—

may have been intended only to apply in situations in which the change in the employee's

position or status would have occurred without any exercise of discretion by the employer.  The

Court again notes that Milhauser has not made this argument—instead he argues only that

seniority is the only situation which permits application of the escalator principle.  But there are

other non-seniority situations in which an employee's position or status may change during his

military leave.  For example, in *Levine v. Berman*, 178 F.2d 440, 443 (7th Cir. 1949), the

Seventh Circuit noted that a returning veteran may be restored to a salesman position with lower

commissions, as long as all other salesmen also received lower commissions.  "In other words,

[plaintiff] was entitled to be restored to the same character of employment, including pay, which

would have been his had he not entered the service, and respondents had a right at any time to

reduce his pay or commission in the same manner as though he had been in continuous

employment, *provided such reduction applied to all other positions of the same or similar

nature*."  *Id.* at 443 (emphasis added).  A reduction in commissions is certainly an "adverse

consequence," and such a reduction is permissible even when "[n]o question of seniority is

---

[12]        This case law includes cases involving USERRA's predecessor statutes.  "Congress
passed USERRA in 1994 to 'clarify, simplify, and, where necessary, strengthen the existing
veterans' employment and reemployment rights provisions.'"  *Woodard v. N.Y. Health & Hosps.
Corp.*, 554 F. Supp. 2d 329, 347 (E.D.N.Y. 2008) (citation omitted).  Prior to USERRA's
enactment, a large body of case law developed under earlier "[f]ederal laws protecting veterans'
employment and reemployment rights."  20 C.F.R. § 1002.2.  Judicial interpretations of those
laws "remain[] in full force and effect, to the extent [they are] consistent with USERRA."  *Id.*

involved." *Levine v. Berman*, 161 F.2d 386, 387 (7th Cir. 1947).[13] *Levine* would suggest that a returning servicemember may suffer from an adverse consequence even when no issues of seniority are involved, at least when the adverse consequence applies to all similarly-positioned employees evenly.

In *McKinney v. Missouri-Kansas-Texas Railroad Co.*, 357 U.S. 265 (1958), the Court interpreted the Universal Military Training and Service Act and held that the employee is entitled only to any automatic promotions or benefits he would have received.

> [The statute] does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his had he not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. [The statute] does not assure him that the past with all its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of employment . . . . [A] veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer.

*McKinney*, 357 U.S. at 271-72.

The Eighth Circuit has stated:

> To be entitled to a promotion or advancement in benefits, a returning serviceman must show that the advancement would have been awarded simply by virtue of continued employment. If a promotion is at least partially dependent on the employer's discretionary determination of fitness and ability, the Act does not accord the veteran a right to an automatic promotion.

---

[13]     In *Levine*, the returning veteran was entitled to his former, higher commissions of ten percent because at the time he applied for reemployment, some other salesmen were earning ten percent commissions (while some others were receiving commissions of only seven-and-one-half percent). *Id.* at 388.

*Goggin v. Lincoln St. Louis*, 702 F.2d 698, 701 (8th Cir. 1983) (citing *McKinney*, 357 U.S. at

272).  Similarly, the district court in *Lapine v. Town of Wellesley*, 167 F. Supp. 2d. 132, 141 (D.

Mass. 2001), when interpreting the Veterans' Reemployment Rights Act, stated, "[Plaintiff] is

entitled to any promotions that would have occurred automatically but is not entitled to

promotions that rely 'on the exercise of discretion' on the part of the [defendant].'" *See also*

*Rivera-Melendez v. Pfizer Pharm., Inc.*, Civil No. 10-1012(MEL), 2011 WL 5442370 (D.P.R.

Nov. 9, 2011) ("Plaintiff was not entitled to be reinstated as an API Team Leader because it was

a position for which employees were selected based on managerial discretion and thus not an

escalator position, which is an automatic promotion based on employee seniority.").

When drafting the final regulations, the Department of Labor received several comments

regarding application of the escalator principle, including questions regarding discretionary

promotions.  70 Fed. Reg. 75271.  One commenter suggested that "[t]he escalator principle is

appropriate only in workforces where pay increases and promotions occur automatically (e.g.

according to collective bargaining agreements or tenure tracks,) rather than for achievement or

merit."  The Department cited *Goggin* and *McKinney* for the proposition that an employee may

not be entitled to a promotion that was based on an exercise of discretion on the part of the

employer.  However, the Department chose not to include such explicit language in the

regulation, instead opting to have the analysis "focus[] on whether a personnel action was

'reasonably certain.'" *Id.*  "The final rule promotes the application of a case-by-case analysis

rather than a rule that could result in the unwarranted denial of promotions to returning service

members based on how the promotion was labeled rather than whether or not it was 'reasonably

certain.'" *Id.*

The case law appears to suggest that an employee may only be entitled to benefits that would have automatically accrued without any discretion on the part of the employer—the Department of Labor's refusal to include such explicit language, however, suggests that no bright-line rule was intended.  If it is ultimately determined that the escalator principle only applies to automatically-accrued benefits, then it is possible that in the future a court might decide that the escalator principle applies in a consistent fashion when adverse consequences are involved: an employee may only be subject to adverse consequences that would have been automatically imposed without any employer discretion.  The consequence may be due to application of a seniority ladder, or it may be due to across-the-board changes that automatically affect all employees with the same job title or responsibilities.  *See, e.g.*, *Levine*, 178 F.2d 440.

If a court were to find that that the escalator principle can only result in a change in position when the change occurs automatically, then arguably the escalator principle should not have applied to Milhauser.  It was undisputed that Minco did not eliminate its entire Maintenance Department, but instead exercised discretion when deciding which four Maintenance Department employees to terminate as part of the reduction in force.  However, Milhauser has never argued that he could only be subjected to automatic changes in his position, nor has he cited any of the case law discussed above.  His argument has consistently been that he was absolutely entitled to a job, regardless of what happened to his former position or why.  Had the entire Maintenance Department been eliminated, and all maintenance employees terminated without any discretion by Minco, Milhauser asserts that because a seniority system was not involved, he was still entitled to a job, even if it meant one in an entirely different department.  The Court will not grant JMOL in favor of Milhauser based on an argument Milhauser did not make.  Milhauser argues instead that seniority is the only factor that may result in an adverse consequence, and that

does not appear to be the law.  The Court only raises this question now because it appears to be an unclear area of law worthy of exploration.

It is evident that under some circumstances, termination may be an appropriate "position of employment" under USERRA.  But there is little, if any, guidance as to which circumstances those might be.  The statute itself, the implementing regulations, and the scarce case law provide little assistance.  For purposes of this motion, however, it is unnecessary to resolve this issue.  Even if termination was not an appropriate position of reemployment in Milhauser's situation under section 4313, based on the facts presented at trial, as discussed below, Minco was nevertheless permitted to terminate Milhauser's employment.

## 2.  *Termination as Part of a Reduction in Force*

Throughout trial until now, Milhauser has argued that under no circumstances could Minco terminate his employment.  He argued that because he was a member of the uniformed services, he was absolutely entitled to a job, regardless of Minco's changed circumstances.  He repeatedly asserted that Minco's financial problems and resulting reductions in force could not make reemployment "impossible or unreasonable" because Minco did make its termination decisions based on seniority.  Thus, according to Milhauser, Minco was not excused from its reemployment obligations.  Following Milhauser's reasoning, Minco would have had to first terminate all other employees in the Maintenance Department, and perhaps even all other employees in the Production Department, before it could even consider terminating Milhauser.  And even then it might have not been impossible or unreasonable to rehire Milhauser.  Milhauser asserted during closing arguments that because Minco "is an $80 million company," it had to find a job for Milhauser somewhere.  This is simply not the law.

USERRA is not a veteran's preference statute. While the statute is to be "broadly construed in favor of its military beneficiaries," *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011), it was not intended to give returning servicemembers special benefits not provided to other employees. *See Monroe v. Standard Oil Co.*, 452 U.S. 549, 561 (1981) (explaining that the legislative history of USERRA's predecessor "strongly suggests that Congress did not intend employers to provide special benefits to employee-reservists not generally made available to other employees"). "Reemployment rights under USERRA cannot put the employee in a better position than if he or she had remained in the civilian employment position." 20 C.F.R. § 1002.42. In *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 286 (1946), the United States Supreme Court explained that the escalator principle "made the restoration as nearly a complete substitute for the original job as was possible. No step-up or gain in priority can be fairly implied." If the employee had been demoted during his military leave, then upon his return, he would have lost his old position and would be entitled to only the inferior one. *Id.* The statute was meant to "guarantee the veteran against loss of position or loss of seniority *by reason of his absence*." *Id.* at 285 (emphasis added). The Court explained that had Congress intended to absolutely prohibit employers from laying off returning veterans where there was still work that could be performed, Congress could have used language making that intent clear. [14] *Id.* at 287. Members of the armed services are therefore "entitled 'to the same treatment afforded their co-workers not having such military obligations . . . .'" *Monroe*, 452 U.S. at 561; *see also Lisdahl v. Mayo Found. for Med. Educ. & Research*, 698 F. Supp. 2d 1081,

---

[14]     In fact, under § 4316(c), USERRA clearly prohibits an employer from discharging any reemployed servicemember without cause. 38 U.S.C. § 4316(c); *see also Rademacher v. HBE Corp.*, 645 F.3d 1005, 1012 (8th Cir. 2011) ("Section 4316(c) temporarily changes the at-will employment status of returning veterans."). Thus, where Congress intended to confer a special benefit upon returning servicemen—a benefit not available to other employees—it explicitly did so.

1107 n.21 (D. Minn. 2010) (stating that the plaintiff "seriously misread USERRA" by interpreting it "as a veterans' preference statute"), *aff'd*, 633 F.3d 712 (8th Cir. 2011); *Crews v. City of Mt. Vernon*, 567 F.3d 860, 865 (7th Cir. 2009) (explaining that USERRA "requires only 'equal, but not preferential' treatment for reservist employees" (citation omitted)); *Rogers v. City of San Antonio*, 392 F.3d 758, 764 (5th Cir. 2004) (same). USERRA requires that the returning servicemember be put in the same position he would have otherwise been in—no better, and no worse.

USERRA allows an at-will employer to terminate a returning servicemember for a number of reasons. For example, USERRA allows an employer to refuse to rehire an employee who had been fired for cause based on actions taken before reemployment. *Hays v. Commc'n Techs., Inc.*, 753 F. Supp. 2d 891, 899 (S.D. Iowa 2010). In *Hays*, the court found reemployment to be unreasonable because the employee had engaged in insubordinate behavior that would have been cause for dismissal at any other time. *Id.* at 899-900.

USERRA also provides that when the returning servicemember's position has been eliminated as part of a reduction in force, the employer is excused from its reemployment obligation. *See, e.g.*, *Davis v. Halifax County School System*, 508 F. Supp. 966, 968 (E.D.N.C. 1981) (explaining that an employer is excused from reemploying a veteran "only where reinstatement would require creation of a useless job or where there has been a reduction in the work force that would reasonable have included the veteran"); *Cole v. Swint*, 961 F.2d 58, 60 (5th Cir. 1992) ("The purpose of the exemption is to allow employers who have eliminated a reservist's position or otherwise drastically changed their business to avoid rehiring someone for a job that no longer exists."); *Kay v. Gen. Cable Corp.*, 144 F.2d 653, 655-56 (1944) (stating that the exemption "was intended to provide for cases where necessary reduction of an employer's

operating force or discontinuance of some particular department or activity would mean simply

creating a useless job in order to reemploy the plaintiff," but that more than just "some loss of

efficiency and possibly some additional expense" is needed).

And despite the protections afforded by section 4316(c), which provides that a person

who is reemployed under USERRA cannot be discharged without cause, an employer is still

allowed to terminate a rehired employee as part of a reduction in force.  *See Johnson v. Mich.*

*Claim Serv., Inc.*, 471 F. Supp. 2d 967, 974 (D. Minn. 2007) (citing numerous cases and

explaining that "when an employer has demonstrated a genuine financial need, which prompts a

reduction-in-force, the termination of an USERRA-protected employee can be 'for cause'");

*Ferguson v. Walker*, 397 F. Supp. 2d 964, 974 (C.D. Ill. 2005) (granting defendants' motion for

summary judgment and concluding that the employer's "decision to terminate Plaintiff's

employment because of budgetary concerns was 'a reasonable one under the circumstances'");

*Michell v. Cont'l Loss Adjusting Servs., Inc.*, No. 93-0219-BH-M, 1994 WL 761962, at *7 (S.D.

Ala. May 25, 1994) (finding that the termination of one employee was for "cause" when there

was insufficient work volume to justify retaining two employees in the same position);

*Ruesterholtz v. Titeflex, Inc.*, 166 F.2d 335, 336 (3d Cir. 1948) (rejecting the petitioner's

argument that adverse economic conditions do not constitute a legitimate basis for discharge and

stating that "[w]e are hardly inclined to assert that an employer is required to continue the job of

a restored veteran purely because the employee is a veteran").

USERRA does not require that an employer give preference to the returning

servicemember over a more desirable employee.  *Cf. Madden v. Rolls-Royce Corp.*, No. 1:06-cv-

0584, 2008 WL 747290 (S.D. Ind. Mar. 18, 2008) (finding no USERRA violation where, due to

reduced work load, the defendant had to lay off one employee and chose to terminate the

reservist's position, rather than eliminate another employee who performed better than the reservist); *Michell*, 1994 WL 761962, at *7 (granting summary judgment in favor of the employer where there was low work volume and the employer selected the veteran, rather than another employee, for termination).  An employer is only required to terminate a better employee in order to rehire the returning servicemember when that employee was hired merely as a replacement for the servicemember while he was on leave, or when the employee was junior to the servicemember on a seniority ladder.  *See, e.g.*, *Goggin v. Lincoln St. Louis*, 702 F.2d 698, 703-04 (8th Cir. 1983) (explaining that an employer may have to "bump" a junior nonveteran employee in order to accommodate a returning veteran's seniority rights); *Kay*, 144 F.2d at 656 (3d Cir. 1944) (explaining that "the employee should be returned to his position even though he has been temporarily replaced by a substitute" who is more efficient, personable, and desirable as a permanent employee); *Cole*, 961 F.2d at 60 ("If mere replacement of the employee would exempt an employer from the Act, its protections would be meaningless."); *Fitz v. Bd. of Educ. of the Port Huron Area Sch.*, 662 F. Supp. 1011 (E.D. Mich. 1985) ("It is not sufficient excuse that another person has been hired to fill the position vacated by the veteran nor that no opening exists at the time of the reapplication." (quoting *Davis*, 508 F. Supp. at 968)).

Milhauser notes that "[e]very case that addresses an employer's financial condition as a reason to excuse reemployment analyzes the issue under the 'impossible or unreasonable' standard currently found in § 4312(d)."  Pl.'s Reply Mem. 5.  The affirmative defense provision of USERRA provides that "[a]n employer is not required to reemploy a person under this chapter if . . . the employer's circumstances have so changed as to make such reemployment impossible or unreasonable."  *Id.* § 4312(d)(1)(A).  "For example, an employer may be excused from reemploying the employee where there has been an intervening reduction in force that would

have included that employee." 20 C.F.R. § 1002.139. The employer has the burden of proving

impossibility or unreasonableness. 38 U.S.C. § 4312(d)(2). The jury found that Minco did not

prove its affirmative defense.

Milhauser now argues that an interpretation that allows termination to be a possible

reemployment position under section 4313 of USERRA renders the affirmative defense

provision under section 4212(d) superfluous. He contends that Minco cannot rely on the same

evidence—that Milhauser would have been terminated as part of a reduction in force due to poor

economic conditions—when arguing that Milhauser's reemployment position was termination.

Instead, any consideration of the employer's economic conditions must be limited to the

"impossible or unreasonable" analysis.[15] Even if Milhauser is correct, to the extent that he is

arguing that Minco's economic problems and reductions in force are only appropriately

considered under the affirmative defense provision, he has waived this argument. During trial,

---

[15]     It is not clear to the Court that the employer's financial condition cannot be considered when determining the appropriate reemployment position. The escalator principle "permits an employer to take into consideration changes in the workplace during an employee's period of military leave." *Woodard v. N.Y. Health & Hosps. Corp.*, 554 F. Supp. 2d 329, 355-56 (E.D.N.Y. 2008). The regulations discuss adverse consequences resulting from seniority or "job classification," but it is not clear what "job classification" means. "The USERRA regulations recognize that an employer's reemployment offer may be affected by changes in staffing or work priorities." *Id.* USERRA permits employers to assess a number of factors when determining how the escalator principle applies. For example, employers may consider "such factors as the employee's opportunities for advancement, working conditions, job location, shift assignment, rank, responsibility, and geographical location, if he or she had remained continuously employed." 20 C.F.R. § 1002.194. Nowhere in the statute or implementing regulations is there an exhaustive list as to which factors a jury may consider when determining in which position the returning servicemember would have been employed, with reasonable certainty, but for his military leave. Milhauser asserts that there is no authority to support Minco's argument that the employer's economic conditions can affect a returning veteran's reemployment position. The Court recognizes that the cases that closely examine the financial condition of the employer do so as part of the affirmative defense analysis. However, Milhauser does not point to, and the Court cannot find, any authority to support the proposition that the employer's circumstances are *only* relevant when considering the affirmative defense of impossibility or unreasonableness under section 4312(d).

he vociferously argued that an employer's financial problems and reductions in force could *not*, as a matter of law, make reemployment "impossible or unreasonable."[16] Citing factually dissimilar case law, Milhauser contended that reductions in force cannot excuse an employer from its reemployment obligations. He stated that there is only a very limited time where a veteran can be let go as part of a reduction in force—when he is let go solely as a result of his seniority status. In the absence of a seniority ladder, Milhauser argued, the affirmative defense of "impossible or unreasonable" *cannot* apply, and that Minco should not even be allowed to argue that Milhauser would have been let go as part of the reduction in force. For support, Milhauser cited 20 C.F.R. § 1002.194, the regulation dealing with the escalator principle under section 4313, *not* the regulation dealing with the affirmative defense under section 4312. Thus, it appears that Milhauser himself conflated the two provisions during trial.

Later, during jury instruction discussions, Milhauser insisted that the jury not be informed that Minco's economic condition and resulting reduction in force could be considered as part of the affirmative defense analysis. The draft instruction on the affirmative defense was as follows:

> Even when an employee would otherwise be eligible for reemployment, an employer is not required to reinstate that employee if the employer's circumstances have so changed as to make reemployment impossible or unreasonable. It is Minco's burden to prove that its circumstances have so changed as to make reemploying Mr. Milhauser impossible or unreasonable. A reduction in force that would have included Mr. Milhauser can be such a circumstance.

---

[16]     Milhauser cited to *Dunlap v. Grupo Antolin Kentucky, Inc.*, 2007 WL 855335, at *3 (W.D. Ky. 2007), in which the court stated that "as a matter of law, mere low work load, layoffs, and a hiring freeze do not make reemployment impossible or unreasonable enough to invoke the exemption of 38 U.S.C. § 4312(d)(1)(A)." *Dunlap*, however, did not address *reductions in force* that resulted in terminations. Further, within a year after laying off a number of employees, the employer had either hired or rehired ninety-nine employees in positions similar to that held by the plaintiff, but had not rehired the plaintiff. *Id.* at *1. Milhauser's situation was not similar to that in *Dunlap*, because Minco was not merely laying off employees, but was terminating employees as part of a reduction in force. Additionally, there was no evidence Minco rehired any of its terminated employees while refusing to rehire Milhauser.

Milhauser argued that the last sentence of the instruction was improper.  The instruction was based on 20 C.F.R. § 1002.139, which explains that "an employer may be excused from reemploying the employee where there has been a reduction in force that would have included that employee."  There is substantial case law indicating that a reduction in force that reasonably would have included the plaintiff constitutes a circumstance making reemployment unreasonable.  *See, e.g.*, *Davis v. Halifax Cnty. Sch. Sys.*, 508 F. Supp. 966, 968 (E.D.N.C. 1981); *Lapine v. Town of Wellesley*, 167 F. Supp. 2d 132, 138 (D. Mass. 2001).  Despite the overwhelming case law (which Milhauser *now* cites when arguing that an employer's financial condition is only relevant to the affirmative defense analysis), he relentlessly argued during trial that Minco should not be allowed to argue that its financial problems and reductions in force made reemployment "impossible or unreasonable" under the affirmative defense.  He contended that USERRA created an absolute duty for Minco to rehire him, and it was not impossible or unreasonable for Minco to do so because it could have terminated some other, perhaps more competent, employee instead.  Milhauser attempted to persuade the Court that Minco's financial condition and reduction in force played no role whatsoever in the USERRA analysis.  After protracted debate on the eve of closing arguments, the Court agreed to remove this last sentence, over objections by Minco.  The final instruction that was submitted in writing to the jury (Jury Instruction No. 10) was as follows:

> Even when an employee would otherwise be eligible for reemployment, an employer is not required to reinstate that employee if the employer's circumstances have so changed as to make reemployment impossible or unreasonable.  It is Minco's burden to prove that its circumstances have so changed as to make reemploying Mr. Milhauser impossible or unreasonable.

Thus, while Milhauser now argues that an employer cannot make the same economic argument under section 4313 as it did under its section 4312(d) affirmative defense, Milhauser

seemingly ignores the fact that he previously argued that Minco could not make that economic argument under section 4312(d) either.  The case law is clear that the employer's economic condition is a relevant factor to be considered *somewhere* in the USERRA analysis.  And despite finding that Minco did not prove its affirmative defense, it is apparent that the jury, in reaching its verdict, did consider Minco's economic problems and resulting reduction in force.  The jury found that Milhauser did not prove that Minco failed to reemploy him in the appropriate position.  Since it was undisputed that Minco terminated Milhauser, the jury could have reached its conclusion only by first finding that the "appropriate reemployment position" in this case was termination.  The only evidence Minco presented related to Milhauser's termination was that he was terminated as part of a reduction in force.  Thus, the jury necessarily found that it was reasonably certain that Milhauser would have been terminated as part of Minco's reduction in force.

Based on the jury instructions as a whole, the jury understood that at some point in the USERRA analysis it was to consider Minco's economic problems and resulting reductions in force.  The jury obviously considered these factors when finding that Milhauser would have been terminated had he not taken military leave.  The fact that the jury concluded that it was reasonably certain that Milhauser would have been terminated as part of Minco's reduction in force, yet found that Minco did not prove its affirmative defense of impossibility or unreasonableness, indicates to the Court that the jury may not have understood that Minco's economic conditions and reduction in force could have been considered, or how they might be considered, as part of the affirmative defense analysis.  But the law clearly requires consideration of these factors somewhere, and Milhauser provided no assistance to the Court as to where consideration of those factors belonged.  He previously argued they could not be considered as

part of the affirmative defense; he now argues they can *only* be considered as part of the affirmative defense.  He cannot have his cake and eat it too.  At Milhauser's insistence the Court did not instruct the jury that it could consider the reduction in force as part of the affirmative defense: he cannot demand incomplete jury instructions, and then benefit by objecting that the jury might have been confused.

The overall purpose of USERRA is to put a returning servicemember back in the position he would have been in had he not taken military leave.  He is not to be made worse off.  But "[r]eemployment rights under USERRA cannot put the employee in a better position than if he or she had remained in the civilian employment position."  20 C.F.R. § 1002.42.  Yet that is precisely what Milhauser urges the Court to do.  Despite the overwhelming evidence that Milhauser lacked the skills, expertise, or versatility of other Maintenance Technicians, and despite the undisputed evidence that there had been numerous complaints about the quality of Milhauser's work, he asserts that he should have been given preference over these other more experienced, more versatile, or more competent employees who were not terminated.  Because of the fortunate happenstance that he went on military leave at a time when his employer was suffering from a major economic downturn and severe decline in business, Milhauser believes that he should have been secure in his job while other, better employees were let go.  His interpretation of USERRA effectively renders it a veterans' preference statute—something that it simply is not.

The jury determined that Milhauser was not made worse off by his military leave—he would have been terminated even had he remained continuously employed.  Despite any possible misunderstanding by the jury regarding the analysis of the appropriate reemployment position and analysis of the affirmative defense, the jury instructions as a whole fairly and adequately

stated the substantive law, as demonstrated by the jury's ultimate arrival at a verdict that appropriately considered all the relevant factors under USERRA.  Thus, Milhauser is not entitled to JMOL or a new trial.

Moreover, based on the evidence presented at trial, it would have been against the great weight of the evidence for the jury to find that Milhauser would not have reasonably been included in Minco's reduction in force.  A defendant proves its affirmative defense if it shows that reemploying the returning servicemember was impossible or unreasonable, and this can be shown by a reduction in force that reasonably would have included the returning servicemember. 38 U.S.C. § 4312(d); 20 C.F.R. § 1002.139.  The evidence adduced at trial overwhelmingly supported Minco's affirmative defense.  It was undisputed that in 2008 and 2009, Minco suffered from a severe decline in business as part of the nation-wide economic downturn.  It was undisputed that Minco took a number of cost-cutting measures, including two company-wide reductions in force.  It was also undisputed that as part of the second reduction in force, four employees from the Maintenance Department were to be terminated.  Mr. Toohey testified that he based his termination decisions on two factors: the employees' versatility and knowledge— employees who he retained either had to be so versatile that they could work on a large volume of equipment, or have unique knowledge that made them indispensable to the company. Milhauser was selected for termination because of his relatively limited experience, abilities, and skill sets.  Mr. Toohey believed that Milhauser was not as versatile as other employees—he was not able to perform maintenance or repairs on as many pieces of equipment as some of the retained Maintenance Technicians.  Further, Mr. Toohey testified that Milhauser did not have any knowledge that made him invaluable to the company.  Moreover, the evidence presented at trial revealed that Milhauser would have been considered for termination even *sooner* had he not

been a member of the uniformed services.  Milhauser presented no evidence to rebut Mr.

Toohey's testimony, other than his own conclusory opinion that he was more skilled than some

of the employees who were retained.  He did not purport to have any unique knowledge, and it

was undisputed that his background was in electronics, and there were other Maintenance

Technicians with electronics expertise.  There was no evidence that Milhauser's military status

or military leave had any impact at all on Mr. Toohey's decision.

Minco also presented compelling evidence that Milhauser was not selected for a job in

the Production Department because of previous complaints regarding his work performance,

attitude, and behavior.  Ms. Himmelgarn testified about complaints she had received regarding

Milhauser's inability to service or repair the equipment in her department.  She testified that

Milhauser's "repairs" sometimes led to the equipment becoming completely inoperable.  In fact,

some employees in her department specifically requested that Milhauser *not* work on their

equipment and asked engineers from other departments to help them instead.  Ms. Himmelgarn

explained these issues to other Production Managers, who relied on her advice when deciding

not to offer Milhauser one of the open positions in the Production Department.  Milhauser

presented no evidence to rebut this testimony, nor were there similar complaints or issues

regarding the employees to whom such production job offers were made.

If the Court were to retry this case, it would have to find as a matter of law that Minco

proved its affirmative defense that it would have terminated Milhauser as part of its reduction in

force.  There was no evidence, not even a scintilla, to the contrary.  Thus, even if Jury Instruction

No. 8 was misleading, the jury came to the correct conclusion based on the evidence presented.

In fact, it came to the only conclusion that the evidence permitted.  If retried, the outcome would

remain unchanged.  Based on the evidence presented at trial, judgment in favor of Milhauser is

entirely inappropriate.  The Court therefore denies Plaintiff's Motion for Judgment as a Matter of

Law.  Further, Milhauser was not prejudiced by any possible jury confusion regarding the

escalator position instruction, so a new trial is not necessary to prevent injustice.  *See Bening v.*

*Muegler*, 67 F.3d 691, 696 (8th Cir. 1995) ("If the objecting party can . . . demonstrate that it was

prejudiced, a new trial is necessary.").  If anything, a new trial would be a pointless exercise in

judicial futility.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    Plaintiff's Motion for Judgment as a Matter of Law, or in the alternative, for New

Trial [Docket No. 81] is DENIED.

Dated: March 2, 2012

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge